IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

GOEL SERVICES, INC.,

    Plaintiff,

    v.

KEVIN DOCKETT, SR. TRUCKING, INC.,

    Defendant.

Civil Action No. 8:12-cv-01377-AW

**MEMORANDUM OPINION**

    Plaintiff/Counter-Defendant Goel Services brings this action against Defendant/Counter-Plaintiff Kevin Dockett, Sr. Trucking, Inc. Pending before the Court are the following Motions: (1) Plaintiff's Motion to Compel Arbitration, (2) Defendant's Motion to Stay Arbitration, and (3) Defendant's Motion for Leave to Amend Answer. The Court has reviewed the entire record and deems no hearing necessary. For the reasons articulated herein, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Stay Arbitration, **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to Compel Arbitration, and **DENIES** Defendant's Motion to Amend Answer.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    The instant case sounds in breach of contract. Plaintiff/Counter-Defendant Goel Services (Goel) is a Delaware corporation whose principal place of business is Washington, D.C. Defendant/Counter-Plaintiff Kevin Dockett, Sr. Trucking, Inc. (Docket) is a Maryland corporation whose principal place of business is Temple Hills, Maryland.

1

The instant dispute arises out of one or more agreements or understandings under which Dockett performed asphalt hauling and trucking services for Goel at Ronald Reagan Washington National Airport in Arlington, Virginia. Apparently, Docket rendered these services between May and July of 2011.

Disputes arose between the Parties. Dockett alleges that, between May 25, 2011 and July 11, 2011, Goel compensated him at the rate of $59.00 per hour for his trucking and hauling services. Dockett further alleges that Goel informed Dockett that it would not pay him for certain prior work unless Dockett agreed to sign a purchase order.

On July 11, 2011, the Parties entered into a purchase order. Doc. No. 17-2. The purchase order contains an arbitration clause stating that "[a]ll disputes arising under this purchase order shall be resolved by arbitration." *Id.* at 2.

Dockett alleges that he signed the purchase order under duress. To support this allegation, Docket states that Goel refused to pay him on July 1, 2011 for the prior week's work. Dockett further states that, on July 11, 2011, he went to Goel's office to demand payment and Goel informed him that it would not pay him for the prior work unless he signed the purchase order. Dockett adds that he signed the purchase order because he needed the check to pay his employees. Doc. No. 23-2 at 2.

Apparently, Docket continued providing services for Goel until July 26, 2011. Docket contends that his company performed $89,875 worth of work for the period between July 11, 2011 and July 26, 2011 and that Goel has paid him only $45,000.

On May 4, 2012, Goel filed its Complaint. Doc No. 1. In its Complaint, Goel asserts claims for (1) breach of contract, (2) replevin and detinue, and (3) conversion. The claims for

replevin and detinue and conversion are based on allegations that Goel stored an excavator at Dockett's Temple Hills office and that Dockett wrongfully refused to return it.

Goel founds its breach of contract claim on allegations that Dockett materially breached an agreement to perform certain trucking work for Goel at the rate of $59.00 per hour by failing to provide sufficient manpower and equipment to perform the required work. Apparently, Goel does not base its breach of contract claim on the purchase order. Rather, it characterizes the Parties' apparent oral agreement or implied contract for Dockett to provide certain trucking work prior to July 11, 2011 as a "Sitework Contract," thereby attempting to distinguish it from the purchase order-related work.

On June 21, 2012, Goel filed an arbitration demand based on alleged overpayment for trucking services. The arbitration demand states that it is based on the arbitration clause in the purchase order. Doc. No. 17-3 at 1.

Docket answered and counterclaimed on June 28, 2012. Doc. No. 12. The Counterclaim contains five counts. The first three are for (1) breach of contract, (2) unjust enrichment, and (3) quantum meruit. In its Counterclaim, Dockett alleges that Goel refused to pay the full amount for the trucking and hauling services it provided to Goel. The counts for unjust enrichment and quantum meruit are based on the same allegations.

Counts (4) and (5) of the Counterclaim are for, respectively, unjust enrichment and quantum meruit. These counts are based on allegations that Dockett rendered services for the repair, transportation, and storage of the excavator that Goel alleges Dockett has wrongfully withheld and that Goel has yet to compensate Dockett for these services. The Parties eventually filed a consent motion for the return of the excavator pursuant to which Goel posted a replevin bond in twice the amount that Dockett alleges Goel owes it for unpaid repairs.

On July 19, 2012, Goel filed a Motion to Stay Count One and Compel Arbitration and to Dismiss Counts Two and Three of Dockett's Counterclaim (Motion to Compel). Doc. No. 17. In this Motion, Goel argues that count (1) of the Counterclaim is subject to arbitration based on the July 11, 2011 purchase order's arbitration clause. Goel also argues that counts (2) and (3) are subject to dismissal because Dockett bases these claims for unjust enrichment and quantum meruit on an express contract between the Parties.

On August 13, 2012, Dockett filed a Motion to Stay Arbitration (Motion to Stay). Doc. No. 24. Dockett makes five major arguments in its Motion to Stay: (1) the purchase order does not apply to all of the work for which Goel seeks repayment; (2) the purchase order is unenforceable by its own terms; (3) a subsequent novation extinguished Dockett's obligations under the purchase order; (4) the purchase order is unenforceable because Dockett signed it under duress; and (5) Goel waived its right to arbitrate by bringing the case at bar before it filed its arbitration demand.

On the same day, Dockett filed a Motion for Leave to Amend Answer (Motion to Amend). Doc. No. 25. In this Motion, Dockett asks the Court for leave to add the affirmative defense of duress.

## II.     STANDARD OF REVIEW

### A.     Preliminary Issues

Neither Party discusses the applicable standard of review. However, both Parties rely on documents outside of the Complaint and Counterclaim to support their respective positions regarding the propriety, or lack thereof, of arbitration. Accordingly, the Court applies the standard of review for summary judgment to these issues.

When a court treats a motion as one for summary judgment, it generally must satisfy itself that the party against whom the court is resolving an issue has (1) notice of the court's treatment and (2) a reasonable opportunity to respond. *See, e.g.*, *Cheraghi v. MedImmune, LLC*, Civil Action No. 8:11–cv–01505(AW), 2011 WL 6047059, at *2–4 (D. Md. Dec. 5, 2011).

Both of these requirements are easily satisfied in this case. The first requirement is satisfied because the Parties relied on material outside of the pleadings to support their respective positions. The second requirement is satisfied because, except where otherwise indicated, the record does not reflect that discovery would change the outcome of the Court's rulings. Furthermore, neither Party has requested discovery on the ground that it cannot adequately oppose the instant Motions without it.

**B.    Standard—Rule 56**

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

**C.     Motion to Dismiss—Rule 12(b)(6)**

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court

need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### III.    LEGAL ANALYSIS

#### A.    Applicable Law

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Id.* (quoting *Moses*, 460 U.S. at 24). However, "[w]hether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (citing *First Options of Chi., Inc.* v. *Kaplan*, 514 U.S. 938, 944 (1995)).

In this case, inter alia, the Court must consider whether Dockett agreed to arbitrate the instant dispute. State law applies to this inquiry. In terms of state law, both Parties cite exclusively to Maryland law to support their arguments concerning whether Dockett agreed to arbitrate the instant dispute.

The Court will follow the Parties' lead and apply Maryland law to this question. Although many relevant events appear to have taken place in Virginia and the District of Columbia, the Supreme Court has suggested that courts should apply the law of the state in

which one seeks to enforce an arbitration agreement to determine whether the parties agreed to arbitrate a particular dispute. *Cf. Kaplan*, 514 U.S. at 944 (citations omitted). This figures to be the case especially where, as here, the arbitration agreement contains no choice of law clause. *Cf. id.* (citations omitted). Accordingly, the Court will apply Maryland law to the question whether the Parties agreed to arbitrate their dispute.

**B.     Background of the Federal Arbitration Act**

The FAA embodies "a liberal federal policy favoring arbitration agreements." *Moses*, 460 U.S. at 24; *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274 (4th Cir. 1997). Two key factors driving this policy are the affordability and expediency that arbitration offers in lieu of litigation. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122 (2001). This liberal policy requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). In accordance with this mandate, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25. Thus, it is well-settled that "the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000).

"[A] litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Adkins*, 303 F.3d at 500–01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

**C.     Dockett's Motion to Stay**

*1.     Whether Goel Waived the Right to Arbitrate*

A party opposing arbitration on a waiver theory bears a heavy burden. *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001). "A party may waive its right to insist on arbitration if the party so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Id.* at 249 (alteration in original) (citation and internal quotation marks omitted). "[E]ven in cases where the party seeking arbitration has invoked the litigation machinery to some degree, [t]he dispositive question is whether the party objecting to arbitration has suffered actual prejudice." *Id.* (alteration in original) (citation and internal quotation marks omitted). "Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration." *Id.* (citation and internal quotation marks omitted). Whether a party has waived its right to arbitrate a particular dispute turns on federal law. *Cf. id.* at 249–54.

In this case, Dockett has not shown that he has suffered actual prejudice sufficient to establish his waiver theory. Dockett's essential argument is that Goel waived the right to arbitrate its breach of contract claim because, after suing, it sought to arbitrate the same claim. This argument fails for two basic reasons. First, as the Fourth Circuit has declared, a party's mere filing of pleadings and subsequent attempt to arbitrate is insufficient, per se, to show actual prejudice. In short, Dockett has not submitted evidence compelling the conclusion that Goel's subsequent attempt to arbitrate its breach of contract claim has caused it actual prejudice.

Second, Goel asserts that the breach of contract claim it sought to arbitrate is distinct from the breach of contract claim under count (1) of the Complaint. Goel insists that it predicates the instant breach of contract claim on Dockett's alleged failure to provide sufficient

9

manpower and equipment to perform the required work at the agreed-upon rate of $59.00. This obligation, according to Goel, arose under a separate, apparently oral or implied agreement it calls the "Sitework Contract." Based on the undeveloped record before the Court, a reasonable juror could conclude that the Parties had a separate agreement and that this agreement underlies Goel's breach of contract claim.

For these reasons, the Court denies Dockett's Motion to Stay as to its waiver argument. However, this denial is without prejudice to the right of Dockett to renew its Motion to Stay if discovery reveals evidence compelling the conclusion that Goel's subsequent arbitration demand has caused it actual prejudice.

    *2.*    *Whether Dockett Accepted the Purchase Order*

Dockett argues that the express terms of the purchase order compel the conclusion that Dockett's ostensible acceptance is not legally binding. Dockett notes that the purchase order states that acceptance "in a manner or on terms and conditions different from those written in this order" does not constitute acceptance. Dockett further asserts that a term stating that the purpose of the purchase order is to "lock-in the hauling tonnage rate at $6.25" is an essential term of the agreement. Dockett continues that, "after the purchase order was signed, the parties continued to act pursuant to the exact same terms under which they had acted for the prior six weeks" (i.e., for the performance of certain trucking work at $59.00 per hour). Doc. No. 34-1 at 6. Therefore, Dockett concludes that he never accepted the purchase order.

This argument is devoid of merit. The purchase order states the essential terms of the deal and includes Dockett's signature. At this point, the Parties formed a contract. Even if the Parties' subsequent behavior deviated from the agreement's express terms, it does not follow that this deviation unravels the completed agreement. Dockett has taken a provision that simply

restates the common law mirror image rule and given it a broad construction that would vitiate otherwise valid contracts whenever a party acts inconsistently with the terms of the agreement. Beyond being doctrinally unsound, this theory would engender undesirable commercial consequences. Thus, the Court rejects the argument that Dockett failed to accept the purchase order.

       3.     *Whether There Was a Novation*

Dockett argues that, even if he accepted the agreement, the Parties' subsequent conduct constituted a novation. "A novation is a new contractual relation made with intent to extinguish a contract already in existence." *BarGale Indus., Inc. v. Robert Realty Co., Inc.*, 343 A.2d 529, 535 (Md. 1975) (citations and internal quotation marks omitted). "It contains four essential requisites: (1) A previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract, and (4) the extinguishment of the old contract, by the substitution of the new one." *Id.* (citations and internal quotation marks omitted).

In this case, the record contains no indication that the elements of a novation have been satisfied. Dockett alleges that, after executing the purchase order, the Parties continued to act pursuant to the same terms under which they had acted before its execution. To buttress this contention, Dockett adduces a handful of invoices that supposedly show that Goel billed Dockett at the $59.00 hourly rate after July 11, 2011. Doc. No. 23-6. Upon closer inspection, however, these invoices relate to work performed between July 6, 2011 and July 8, 2011. Furthermore, even had the Parties continued to abide by the terms of their pre-purchase order agreement, it is unclear how this activity would suffice to establish the elements of a novation. Therefore, the Parties' conduct did not display a novation.

       4.     *Whether Dockett Signed the Purchase Order Under Duress*

Under Maryland law,

> duress sufficient to render a contract void consists of the actual application of physical force that is sufficient to, and does, cause the person unwillingly to execute the document; as well as the threat of application of immediate physical force sufficient to place a person in the position of the signer in actual, reasonable, and imminent fear of death, serious personal injury, or actual imprisonment.

*United States ex rel. Trane Co. v. Bond*, 586 A.2d 734, 740 (Md. 1991).

In this case, Dockett does not aver that Goel applied coercive physical force when the Parties entered into the purchase order. Nor does Dockett contend that the threat of the application of immediate physical force was present. Instead, Dockett insists that Goel told him that it would not pay him for the past work if Dockett would not sign the purchase agreement and that Dockett succumbed to this coercion because he had to pay his workers. Taken to its logical limit, this argument would mean that duress is present whenever a party seeks to renegotiate unfavorable terms in a contract and expressly conditions its acceptance of the new deal on concessions to the unfavorable terms. Moreover, even if economic duress is sufficient to establish duress in extreme circumstances, Dockett's vague and self-serving allegations are inadequate to support a finding of duress. Thus, Dockett did not sign the purchase order under duress.

        5.       *Whether Disputes Arising Prior to the Execution of the Purchase Order Are Subject to Arbitration*

Dockett argues that disputes arising prior to the date on which he signed the purchase order are not arbitrable. The Court of Appeals of Maryland has "long adhered to the objective theory of contract interpretation." *Myers v. Kayhoe*, 892 A.2d 520, 526 (Md. 2006) (citing *Traylor v. Grafton*, 332 A.2d 651, 675 (1975)). "'A court construing an agreement under [the objective theory] must first determine from the language of the agreement itself what a

reasonable person in the position of the parties would have meant at the time it was effectuated.'" *Id.* (quoting *Dennis v. Fire & Police Emps. Ret. Sys.*, 890 A.2d 737, 747 (2006)). "[W]hen the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed." *Id.* (quoting *Dennis*, 890 A.2d at 747). In other words, "[a] court will presume that the parties meant what they stated in an unambiguous contract, without regard to what the parties to the contract personally thought it meant or intended it to mean." *Maslow v. Vanguri*, 896 A.2d 408, 420 (Md. Ct. Spec. App. 2006) (citations omitted).

In this case, the plain language of the arbitration agreement compels the conclusion that disputes arising before its execution are not arbitrable. In relevant part, the purchase order provides that "[a]ll disputes arising **under this purchase order** shall be resolved by arbitration." Doc. No. 17-2 at 2 (emphasis added). Disputes arising prior to the purchase order's execution could not have arisen under it as it was not yet in existence. Indeed, Goel concedes that the so-called Sitework Contract underpins its arbitration demand.

Although some courts have held that arbitration clauses may apply retroactively, this occurs where, unlike here, the clause is written broadly and/or contains special language evincing an intent for retroactive application. *See, e.g., Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998). For instance, the arbitration clause at-issue in *Cara's Notions* stated that it applied to "[a]ny controversy or claim arising out of or relating to . . . *any aspects of the relationship*" between the parties. *Id.* (internal quotation marks omitted). Here, however, the arbitration clause simply states that it applies to disputes arising "under this purchase order."

These considerations compel the conclusion that pre-purchase order disputes are not subject to arbitration. Accordingly, the Court stays the parallel arbitration proceeding insofar as Goel seeks to arbitrate such disputes.

**D.      Goel's Motion to Compel**

Goel asks the Court to compel Dockett to arbitrate its breach of contract claim. Goel also seeks dismissal of Dockett's unjust enrichment and quantum meruit claims under counts (2) and (3).

*1.      Whether to Stay Count One (Breach of Contract) and Compel Arbitration*

Given the Court's preceding analysis, the resolution of this question is straightforward. The purchase order requires Dockett to arbitrate any claims arising under it. Therefore, to the extent that (1) Dockett bases its breach of contract claim on disputes arising on or after July 11, 2011 and that (2) the purchase order otherwise covers the disputes, said disputes are subject to arbitration.

However, it appears certain that not all of the Parties' disputes arose on or after July 11, 2011 and are otherwise subject to the purchase order. Consequently, the Court grants in part Goel's Motion to Compel and orders Dockett to arbitrate any disputes arising on or after July 11, 2011 that are otherwise subject to the purchase order.

*2.      Whether to Stay Counts Two and Three (Unjust Enrichment and Quantum Meruit)*

Goel argues that parties may not assert claims for unjust enrichment and quantum meruit when an express agreement governs the provision of goods or services for which recovery is sought. "The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607

(Md. 2000) (citation and internal quotation marks omitted). "However, although [the plaintiff] may not recover under both contract and quasi-contract theories, [he/she] is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002).

In this case, the purchase order (i.e., express agreement) does not cover disputes arising before it was signed. Therefore, nothing bars Dockett asserting unjust enrichment and quantum meruit claims based on these disputes.

As to the post-purchase order disputes, Dockett seems to argue that there is uncertainty as to the application of the purchase order and that, if the purchase order does not apply, it is entitled to recover for these disputes under the theory of unjust enrichment and/or quantum meruit. However, as indicated above, the main evidence Dockett submits in support of this theory are invoices for services that Dockett rendered in the July 6, 2011 to July 8, 2011 period. In short, the record is barren of evidence from which one could infer uncertainty concerning the application of the purchase order to the post-July 11, 2011 services. For these reasons, the Court dismisses counts (2) and (3) insofar as Dockett bases them on post-July 11, 2011 disputes arising under the purchase order.

The Court is aware that, rather than moving for summary judgment, Goel technically only moved to dismiss counts (2) and (3). Therefore, even though it is fair to treat Goel's motion to dismiss these counts as one for summary judgment, this dismissal is without prejudice to the right of Dockett to seek reinstatement of these claims if discovery produces evidence sufficient for a reasonable fact-trier to conclude that the purchase order does not cover the post-July 11, 2011 disputes.

**E.     Dockett's Motion to Amend**

Dockett has filed a Motion to Amend its Answer to add the affirmative defense of duress. Dockett's duress defense, however, fails as a matter of law. As amendment would be futile, the Court denies Dockett's Motion to Amend.

**IV.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Dockett's Motion to Stay, **GRANTS IN PART AND DENIES IN PART** Goel's Motion to Compel, and **DENIES** Dockett's Motion to Amend. A separate Order follows.

| October 22, 2012 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |